IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MASON L. HUTTER,

        Plaintiff,

    v.

SHELLY FOX, EDIE FERRILL, JAYME FOLEY,
and ST. CROIX COUNTY,

        Defendants.

OPINION and ORDER

16-cv-718-jdp

---

MASON L. HUTTER,

        Plaintiff,

    v.

RICK HUNEKE, PIERCE COUNTY, and
NANCY HOVE,

        Defendants.

OPINION and ORDER

18-cv-576-jdp

---

In case no. 16-cv-718-jdp, pro se plaintiff Mason L. Hutter alleges that employees in the St. Croix County clerk of court's office put incorrect information into his criminal and driver's license records, causing him to be arrested for violating conditions that did not apply to him. In case no. 18-cv-576-jdp, Hutter alleges that a Pierce County sheriff's deputy violated his rights under the First and Fourth Amendments by pulling him over repeatedly, arresting him, and fabricating testimony in support of a warrant for a blood draw. He also alleges that the Pierce County sheriff and the county are responsible for the deputy's actions. In a previous order, I consolidated these two cases because there appeared to be factual overlap between them. The summary judgment record for each case suggests that there is actually no factual overlap between the two cases. But because the parties' summary judgment filings have been

docketed in both cases, I will continue to treat the cases as consolidated in this opinion. Several motions are before the court in each case.

First, the St. Croix defendants (Shelly Fox, Edie Ferrill, Jayme Foley, and St. Croix County) have filed a motion for summary judgment, contending that Hutter's claims against them fail for numerous reasons. Dkt. 126.[1] I will grant the motion because Hutter has not shown that any of the St. Croix defendants violated his Fourth Amendment or state-law rights. In addition, he did not comply with Wisconsin's notice of claim statute, Wis. Stat. § 893.80, before bringing this lawsuit.

Second, the Pierce County defendants (Rick Huneke, Nancy Hove, and Pierce County) filed a motion for summary judgment. Dkt. 134. I will grant their motion as well, because Hutter has not shown that these defendants violated his First or Fourth Amendment rights.

Third, Hutter filed several motions for leave to amend his complaints and to proceed on additional claims against additional defendants. Dkts. 111, 112, 113, 114, 118, 119, 120, 124, 125, 146. I will deny those motions because they are untimely and because Hutter is seeking to add claims that I dismissed already or that are not sufficiently related to the claims that are pending in these cases.

Fourth, Hutter filed a motion to compel, Dkt. 148, and a motion for sanctions, Dkt. 147, against the Pierce County defendants. I will deny those motions as well. Hutter has not shown that defendants failed to respond to any properly served discovery requests. He also has not shown that defendants engaged in any conduct that would warrant sanctions.

---

[1] All citations to the docket are from case number 16-cv-718-jdp unless otherwise noted.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

## A. St. Croix County

In January 2015, plaintiff Mason Hutter was arrested and charged with possession of methamphetamine as a repeater, in St. Croix County case 2015CF14. His initial appearance occurred on January 12, 2015. On the same day, another individual, William Johnson, had an initial appearance in an unrelated case, St. Croix County case 2015CF12, for charges of possession of methamphetamine and second offense operating while under the influence. Hutter's driver's license number was entered erroneously into the electronic court records associated with Johnson's case. Hutter discovered the association after he was stopped by a police officer, arrested, and jailed for failing to have an ignition interlock device on his vehicle, which was a restriction that applied to Johnson, but not to Hutter. (The parties did not submit any evidence about the arrest, such as the information the arresting officer relied on when arresting Hutter. It is not clear whether the officer relied on information from Hutter's driving records, criminal records, or some other record in determining erroneously that Hutter should have had an ignition interlock device on his vehicle.)

In August 2015, Hutter went to the St. Croix clerk of court's office to seek help in fixing the problem of his driver's license number being linked to Johnson's criminal case. He spoke with defendant Shelly Fox, who held the position of lead worker in the clerk of court's office. Hutter gave Fox the criminal case number that his license had been associated with. (It is not clear from the record how Hutter discovered which case his driver's license number had been linked with.) Fox attempted immediately to determine how Hutter's driver's license had become associated with an unrelated person's criminal conviction and how to fix it.

3

Fox reviewed the electronic docket for Johnson's case on the state's electronic case management system (CCAP). Johnson's correct driver's license number was listed on all but one of the entries on the electronic docket. The one exception was in the "parties" tab for Johnson's case. The parties tab contains information about the parties that can be seen only by the parties to the action and judicial staff, but not by the general public. Fox found that Hutter's driver's license number had been entered into the parties tab for Johnson's case. (Hutter's driver's license number was entered correctly throughout the docket of his 2015 criminal case.) Fox removed Hutter's driver's license number from the parties tab in Johnson's case.

Fox also discovered that Hutter's driver's license number was listed on Johnson's "conviction status report." A conviction status report is a document that is generated automatically by CCAP after a judgment of conviction is entered into CCAP in a case involving a driving offense. The report contains information about the convicted person, including his or her driver's license number, and the report is sent to the Department of Transportation. The clerk of court's office does not input information into a conviction status report manually; rather, CCAP determines what information to include in a conviction status report. In Johnson's case, Hutter's driver's license number was on the conviction status report that was generated and sent to the Department of Transportation. After Fox discovered that Hutter's driver's license number was listed on Johnson's conviction status report, she notified the Department of Transportation. Fox created new, handwritten conviction status reports for both Johnson's and Hutter's 2015 cases. Fox sent the corrected reports to the Department of Transportation. She also sent a letter to the Pierce County district attorney explaining what she thought might have occurred.

There are no records showing who entered Hutter's driver's license number into the parties tab in Johnson's case. The parties tab can be completed by either the district attorney, at the time a criminal complaint is filed, or by the deputy criminal clerk in the St. Croix County clerk of court's office, at the time the arrestee attends criminal intake court for an initial appearance. At the time of Hutter's and Johnson's initial appearances on January 12, 2015, defendant Edie Ferrill was the deputy criminal clerk. Ferrill does not recall whether she populated the parties tabs in Johnson's or Hutter's cases. If she did, Ferrill would have used information from booking sheets to populate the tabs. (The other St. Croix county defendant, Jayme Foley, was a financial assistant in the clerk of courts' office. Foley had no role in entering information into CCAP or in generating conviction status reports.)

There are also no records showing why Hutter's driver's license number was listed on Johnson's conviction status report. Fox contacted a CCAP representative, who told her that the driver's license numbers contained in the conviction status reports are not taken from the parties tab in CCAP. But because the parties tab is the only location where Fox found Hutter's driver's license number in the Johnson case, Fox could not determine why Hutter's driver's license number appeared on Johnson's conviction status report.

## B. Pierce County

Defendant Rick Huneke is a deputy sheriff with the Pierce County Sheriff's Office. From January 2015 to October 2018, Huneke was assigned to overnight patrol for Pierce County. Huneke stopped Hutter for traffic violations on several occasions during that time.

On January 23, 2016 at approximately 1:30 a.m., Huneke stopped Hutter for driving his vehicle without a front license plate, in violation of Wis. Stat. § 341.15(1). After Huneke approached Hutter's vehicle, he noted that Hutter had bloodshot and glassy eyes and that

there was an odor of intoxicants coming from the vehicle.[2] Huneke asked Hutter to perform field sobriety tests. After deciding that Hutter had performed several of the tests unsuccessfully, Huneke arrested Hutter for operating a motor vehicle while intoxicated as a second offense. Huneke asked Hutter to take a preliminary breath test and give a blood sample, but Hutter refused. Huneke later obtained a warrant to draw Hutter's blood, and the blood test showed that Hutter's blood alcohol concentration was 0.08 g/100 mL. Dkt. #68-3. At the time, Hutter was on community supervision in at least two different criminal cases. He gave a statement admitting that he violated his rules of community supervision by drinking and driving. Dkt. 150-1. His probation and extended supervision were revoked as a result. Dkt. #145-2. But his criminal case for the events of January 23 was ultimately dismissed on the prosecutor's motion after Hutter filed a successful motion to suppress the results of the field sobriety and blood alcohol concentration tests. (The state court judge concluded that Huneke did not have reasonable suspicion that Hutter was intoxicated at the time he asked Hutter to perform field sobriety tests.)

On September 20, 2017, at 2:39 a.m., Huneke stopped Hutter because Hutter was driving a vehicle with expired license plates. On November 23, 2017, at 12:18 a.m., Huneke stopped Hutter because he was driving a vehicle that was registered to someone with a suspended license. (It is not clear from the record whether Hutter received citations as a result of these stops.)

---

[2] The parties did not propose facts relating to Hutter's arrest on January 23, 2016, even though some of Hutter's claims are based on the stop and arrest. The facts relating to the arrest and motion to suppress are drawn from the state court records that Hutter submitted with his earlier pleadings. Dkt. 85-1; Dkt. 85-3. The court may take judicial notice of these state court records. *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012).

On November 29, 2017, Huneke stopped Hutter again because he was driving a vehicle that was registered to someone with a suspended license. As a result of the stop, Hutter received a warning for driving with no current proof of insurance. During the stop, Huneke asked Hutter about ownership of the vehicle and whether Hutter would be driving it in the future, but Hutter refused to speak with Huneke. Approximately two minutes after finishing the stop, Huneke drove past the stop location and saw Hutter outside of his vehicle. Huneke pulled up next to Hutter and asked if Hutter needed anything. Hutter responded by getting into his vehicle and locking the doors.

The next day, November 30, Huneke and another deputy saw what they thought was a 2002 gray Hyundai Sonata that matched the description of a vehicle suspected of being involved in illegal drug activities. Huneke pulled onto the road behind the vehicle and ran its plates. The vehicle was actually a 2004 gray Hyundai Sonata, driven by Hutter. Because the vehicle was not the suspected vehicle, Huneke and the deputy did not stop the vehicle and instead returned to the area where they had been parked. Hutter then pulled up, thanked Huneke for not pulling him over, and shook Huneke's hand. Huneke told Hutter that he had not stopped him because he realized the vehicle did not match one he suspected of being involved in drug activity. Huneke also told Hutter that he had nothing against him, that he was not harassing him, and that he would stop Hutter if he violated the law, just like he would stop anyone else. Hutter showed Huneke blank harassment restraining order papers, told Huneke that he was glad that they had talked, and stated that he would no longer be filing an injunction against Huneke.

Hutter complained to Pierce County and defendant Nancy Hove, the Pierce County sheriff, that Huneke had been harassing him and had committed perjury at the suppression hearing in his operating while intoxicated case. Hove declined to investigate Huneke's actions.

ANALYSIS

## A. Hutter's motions to amend his complaint and motions to compel discovery

Hutter has filed several motions to amend his complaint in case no. 18-cv-576-jdp. His motions fall into three categories. First, he seeks to add state-law claims against defendants Huneke, Hove, and Pierce County. Dkt. 113; Dkt. 114; Dkt. 121. But I dismissed his state-law claims against Huneke in a previous order because Hutter failed to file a notice of claim as required by Wis. Stat. § 839.80. Dkt. 102 at 9–10. And I explained to Hutter that he cannot proceed with state-law claims against any of the Pierce County defendants for the same reason. *Id.* So I will deny his motions to add state-law claims against the Pierce County defendants.

Second, Hutter has filed several motions seeking to add new claims against Donny Knutson, another Pierce County deputy, based on Knutson's involvement in the November 29, 2017 traffic stop with Huneke. Dkt. 111; Dkt. 112; Dkt. 118; Dkt. 119; Dkt. 146. Hutter alleges that Knutson arrived at the traffic stop with a K9 unit at about the same time that Huneke arrived, and that Knutson ordered the K9 unit to sniff Hutter's vehicle. Hutter alleges that the stop lasted less than five minutes. He does not allege that he received any citations as a result of the stop or the K9's search, but he alleges that the K9 search violated his Fourth Amendment rights because Knutson had no probable cause or reasonable suspicion to think that Hutter had drugs in his vehicle.

I will deny Hutter's request to add a claim against Knutson because it comes too late. Hutter has filed, and has been granted, numerous requests to amend his complaint, but he does not explain why he waited so long to add claims against Knutson. Because Hutter was present for the November 29, 2017 stop, he has known about Knutson's involvement in the stop since November 2017. But Hutter did not seek permission to add claims against Knutson until this case had been pending for more than a year and after Hutter had been granted several motions to amend his complaint. It is unfair to defendants to permit Hutter to continually add new claims and new defendants to his case, particularly when the case has now progressed to the summary judgment stage.

Another reason I will deny Hutter's request to add claims against Knutson is that his allegations fail to state a Fourth Amendment claim against Knutson. Hutter contends that Knutson violated his rights by ordering his K9 unit to sniff his vehicle without having any probable cause to suspect that Hutter had illegal drugs in his vehicle. But a dog sniff during a lawful stop does not violate the Fourth Amendment, even without reasonable suspicion of drugs, unless the sniff prolongs the stop beyond the time reasonably necessary to accomplish the purpose of the stop. *United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019) (*citing Illinois v. Caballes*, 543 U.S. 405, 410 (2005)). Hutter alleges that Knutson arrived at the same time as Huneke and that the entire stop, including the dog sniff, was completed within five minutes. These allegations do not suggest that the dog sniff prolonged the stop unreasonably in violation of the Fourth Amendment.

Hutter's third group of motions to amend his complaint concern his claims that he has been denied sentencing credit for the time he spent incarcerated while he was waiting for revocation proceedings in 2016. Dkt. 120; Dkt. 124; Dkt. 125. I will deny these motions

because they are not sufficiently related to the claims that are pending in either 16-cv-718-jdp or 18-cv-576-jdp. Hutter's allegations do not suggest that any of the named defendants were responsible for calculating his sentence or awarding his sentencing credits after revocation.

Finally, Hutter filed a motion to compel discovery, Dkt. 148, and a motion for sanctions, Dkt. 147, against the Pierce County defendants. I will deny both motions because defendants' counsel has explained that Hutter never served proper discovery requests seeking the information he discussed in his motion to compel. Dkt. 158. Hutter instead submitted an open records request for the information. Defendants are not responsible under the Federal Rules of Civil Procedure for answering open records requests, and Hutter cannot use a motion to compel discovery to obtain a response to his open records request. I will deny the motion for sanctions because Hutter has not identified any conduct by the Pierce County defendants that would warrant sanctions.

## B. St. Croix County defendants' motion for summary judgment

In case no. 16-cv-718-jdp, Hutter is proceeding on claims that (1) Shelly Fox put incorrect information into his driver's license and criminal records and left that information in the file even after being alerted to the error, in violation of the Fourth Amendment; (2) Fox and St. Croix County subjected him to false imprisonment; and (3) Fox, Edie Ferrill, Jayme Foley, and St. Croix County were negligent and defamed Hutter by failing to correct the false information in his driver's license and criminal records. Defendants are entitled to summary judgment on all of these claims.

Hutter has not submitted facts to support a constitutional claim against Fox under the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures. Fox could be liable for a Fourth Amendment violation only if she caused or participated in an

unreasonable search of seizure of Hutter. *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). But Fox did not cause Hutter to be arrested and she was not personally involved in searching or seizing him. Fox was not responsible for entering information about Hutter into his driver's license or criminal records. And she acted immediately to correct errors in Hutter's and Johnson's records when she became aware of them. Fox did not violate Hutter's Fourth Amendment rights.[3]

As for Hutter's state-law false imprisonment, defamation, and negligence claims, these claims must be dismissed because Hutter failed to file a notice of injury and itemized statement of relief as required by Wis. Stat. § 893.80(1d) for actions brought against a governmental body or officer. Hutter concedes that he did not file a notice of injury or statement of relief within the time limits set by statute, but he argues that he did not have to comply with the statute because this is a "Jane Doe proceeding." Dkt. #139 at 2. Hutter is mistaken. This is not a Jane Doe proceeding. It is a federal lawsuit in which he is asserting state-law claims. As I have explained in previous orders, the requirements of § 893.80(1d) apply. Because Hutter failed to comply with the statutory requirements, I will grant the St. Croix defendants' motion for summary judgment as to his state-law claims.

Even if Hutter had complied with the notice of claim statute, I would grant summary judgment to St. Croix defendants on his state-law claims because the undisputed facts do not support any state-law claims against any of the defendants. To succeed on a false imprisonment claim, Hutter would have to show that: (1) defendants intended to confine him; (2) defendants

---

[3] Hutter alleged in several of his pleadings there are still errors in his criminal record that Fox and the St. Croix clerk of court's office have refused to correct, but he submitted no evidence that any errors remain in his records.

directly or indirectly confined him; and (3) Hutter was conscious of the confinement or was harmed by it. *See Herbst v. Wuennenberg*, 83 Wis. 2d 768, 774–75, 266 N.W.2d 391, 394–95 (1978) (setting forth elements of Wisconsin false imprisonment claim). Hutter has submitted no evidence showing that Fox, or any other St. Croix County defendant, intended to confine, or actually confined, him.

To succeed on his defamation claim, Hutter would have to show that defendant (1) made a false statement that was communicated to someone other than the person defamed; (2) the statement was not privileged; and (4) the statement would tend to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *See Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472 (1997); *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 672 N.W.2d 306. Hutter has submitted no evidence that any of the St. Croix defendants communicated a false statement about Hutter to anyone. Defendants Fox and Foley did not enter any information about Hutter into his or Johnson's criminal or driver's license records, let alone false information.

As for defendant Ferrill, the evidence does not confirm one way or the other whether she was the person who entered incorrect information about Hutter into an unrelated case. It is possible that Ferrill mistakenly entered Hutter's driver's license number into the parties tab on Johnson's case. But even if I assume that Ferrill did so, and that her mistake qualifies as a false statement, Hutter has not shown that the error in the parties tab was communicated to anyone else. The parties tab contains information about the parties that can be seen only by the parties to the action and judicial staff, but cannot be seen by the general public. The information from the parties tab was not used to generate the conviction status report that was

sent to the Department of Transportation, and there is no evidence showing that the information in the parties tab was sent to any law enforcement agency either. And even if Hutter could show that the error in the parties tab was communicated to someone else, Ferrill's error was a privileged communication made within the criminal justice process, not a defamatory statement. *See Hartman v. Buerger*, 71 Wis. 2d 393, 398, 238 N.W.2d 505, 508 (1976) (communications made in judicial or quasi-judicial process are absolutely privileged and not defamatory).

Finally, to succeed on a negligence claim, Hutter would have to show that (1) defendants had a duty of care; (2) they breached that duty of care; (3) their breach caused Hutter's injury; and (4) Hutter experienced actual loss or damage from the injury. *See Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶ 16, 313 Wis. 2d 294, 752 N.W.2d 862. Hutter has submitted no evidence showing that Fox, Foley, or Pierce County were negligent. As for Ferrill, even if I assume that she breached a duty of care by mistakenly entering Hutter's driver's license number into the parties tab in Johnson's criminal case, Hutter cannot satisfy the third element of his negligence claim. He has submitted no evidence showing that Ferrill's alleged mistake caused him to be arrested later. For example, he has not shown that the officer who arrested him for failing to have an ignition interlock device relied on information that Ferrill had entered in the parties tab in Johnson's criminal case. It may be that the arresting officer relied on information transmitted from the Department of Transportation, based on Johnson's conviction status report. There is no evidence about that one way or the other. And speculation or conjecture are not sufficient to defeat summary judgment. *Daza v. Indiana*, 941 F.3d 303, 308 (7th Cir. 2019).

For all of these reasons, I will grant the St. Croix defendants' motion for summary judgment in full.

## C. Pierce County defendants' motion for summary judgment

In case number 18-cv-576-jdp, Hutter is proceeding on claims that defendant Rick Huneke stopped him multiple times for no reason, lied to a court commissioner to obtain a warrant to draw his blood, and lied about Hutter during a court hearing, in violation of the Fourth and First Amendments. He is also proceeding on claims that Sheriff Nancy Hove and Pierce County are liable for Huneke's constitutional violations.

### 1. Fourth Amendment

Hutter alleged in his complaints that Huneke stopped him multiple times without reasonable suspicion. Under the Fourth Amendment, an officer may conduct a stop for investigatory purposes if the officer has particularized and reasonable suspicion that the suspect is engaged in illegal activity. *Navarette v. California*, 572 U.S. 393, 396 (2014). Huneke has submitted evidence that each time he stopped Hutter, he had reasonable suspicion that Hutter had committed a traffic violation: on January 23, 2016, Huneke stopped Hutter for driving a vehicle without a front license plate; on September 20, 2017, Huneke stopped Hutter because he was driving a vehicle with expired license plates; on November 23 and 29, 2017, Huneke stopped Hutter because he was driving a vehicle that was registered to someone with a suspended license. Hutter has submitted no evidence to refute that each of these stops was supported by reasonable suspicion that Hutter had committed a traffic infraction.

Hutter also alleged that Huneke arrested him without probable cause on January 23, 2016. An officer may arrest someone if there is probable cause to believe that the suspect has committed, is committing, or is about to commit an offense. *Harney v. City of Chicago*, 702 F.3d

916, 922 (7th Cir. 2012). Hutter has submitted no evidence showing that that Huneke arrested him without probable cause. The state court records show that Huneke arrested Hutter on January 23 for operating while intoxicated, after Hutter failed to complete field sobriety testing successfully. Hutter has submitted no evidence to dispute that performed poorly on the field sobriety tests. He also does not challenge the reliability of the tests Huneke used or otherwise argue that poor performance on the tests did not provide Huneke with probable cause to arrest him. Instead, he argues that because Huneke lacked reasonable suspicion to conduct field sobriety testing at all, his subsequent arrest, which was supported by the results of the field testing, was unlawful. This argument fails for three reasons.

First, Hutter was not granted leave to proceed on a claim that Huneke lacked reasonable suspicion to conduct field sobriety testing. If Hutter intended to pursue such a claim, he should have filed a motion identifying that claim after the screening order was issued early in this case.

Second, Hutter has submitted no evidence suggesting that Huneke lacked reasonable suspicion to perform the field sobriety testing. Hutter makes some legal arguments in his brief about the incident, but he has not submitted any facts or evidence to support his argument.[4] To survive summary judgment, Hutter must do more than make unsupported assertions. *See Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 580 (7th Cir. 2019).

Third, the exclusionary rule does not apply in a civil lawsuit under § 1983 against a police officer. *Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019). So Hutter cannot show that his arrest was unlawful soley by showing that Huneke relied on the results of illegal field

---

[4] Neither side discusses the preclusive affect, if any, that the state court judge's ruling on Hutter's motion to suppress should have in this case, so I have not considered that question either.

sobriety tests in concluding that there was probable cause to arrest him. In a civil lawsuit, evidence that is obtained through an illegal search or seizure is still relevant to establishing probable cause for an arrest. *Id.* And so long as Huneke had probable cause to arrest Hutter, Hutter's false arrest claim fails. *See Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983."). From the state court records, it appears that Huneke found probable cause based on his assessment of Hutter's performance on field sobriety tests, the smell of intoxicants in the vehicle, and Hutter's glassy and bloodshot eyes. Hutter has not argued that these facts are insufficient to establish probable cause to arrest for operating while intoxicated. Therefore, his false arrest claim fails.

Hutter claims that Huneke also violated his Fourth Amendment rights by lying to the court commissioner to obtain a warrant to draw Hutter's blood. Hutter alleges that Huneke gave contradictory statements about his performance on the field sobriety tests, but he has submitted no evidence to support his argument. Huneke's affidavit to the court commissioner, Dkt. 85-3, at 6–8, appears to be consistent with Huneke's written report of the arrest, *Id.*, at 3–5, his verbal statements to the commissioner, *Id.*, at 9–15, and his statements at the suppression hearing, Dkt. 85-1, at 5–18. Accordingly, Hutter has failed to submit evidence to support his Fourth Amendment claims.

### 2. First Amendment

Hutter claims that Huneke violated his First Amendment rights by pulling him over repeatedly and lying during the suppression hearing in his drunk driving case, in retaliation for Hutter complaining to Sheriff Hove about Huneke's harassment. To succeed on a First Amendment retaliation claim, Hutter must present evidence that: (1) he engaged in activity

protected by the First Amendment; (2) Huneke took actions that would deter an average person from engaging in the protected activity; and (3) Huneke's First Amendment activity was at least a motivating factor in Huneke's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Huneke has submitted evidence sufficient to satisfy the first element of a retaliation claim, as he states that he complained to Hove and the county about Huneke's alleged harassment.

As for the second and third elements, Hutter states that Huneke stopped his vehicle repeatedly after he complained to Hove. But Hutter has submitted no evidence showing that Huneke was motivated to stop Hutter because of Hutter's complaints. Hutter does not say when he complained about Huneke or which stops occurred after the complaints, so it is impossible to infer that Huneke increased his interactions with Hutter after Hutter complained, or because of Hutter's complaints. In addition, the record shows that all of Huneke's interactions with Hutter were supported by reasonable suspicion that Hutter was engaging in a traffic infraction.

Hutter also contends that Huneke retaliated against him by lying at the suppression hearing in his criminal drunk driving case. But Hutter has not shown that Huneke lied at the hearing. Hutter points to Huneke's testimony at the hearing that Hutter's eyes did not "track equally," Dkt. 85-1, at 7, and Huneke's later correction at the same hearing that Hutter's eyes did track equally, *Id.* at 8. There is nothing about Huneke correcting himself that suggests a retaliatory motive. He clarified his statement on the record, before the circuit court made any decision on the motion to suppress. These statements do not support a retaliation claim.

### 3. Defendants Hove and Pierce County

Hutter asserted constitutional claims against Sheriff Hove and Pierce County, based on allegations that they enacted policies that caused Huneke's constitutional violations and then failed to adequately supervise and discipline Huneke despite knowing that he was harassing Hutter and had committed perjury. But because Hutter has failed to submit evidence showing that Huneke violated his First or Fourth Amendment rights, his claims against Hove and Pierce County fail. *See Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 470 (7th Cir. 2016) (claim against county fails if there is no underlying constitutional violation).

ORDER

IT IS ORDERED that:

1. Plaintiff Mason L. Hutter's motions for leave to amend his complaint, Dkts. 111–114; Dkts. 118–121; Dkt. 124; Dkt. 125; Dkt. 146 in case number 16-cv-718-jdp; Dkts. 94–97; Dkt. 102–105; Dkt. 108; Dkt. 109; Dkt. 130 in case number 18-cv-576-jdp, are DENIED.

2. Plaintiff's motions to compel discovery requests and for sanctions, Dkt. 147 and Dkt. 148 in case number 16-cv-718-jdp; Dkt. 131 and Dkt. 132 in case number 18-cv-576-jdp, are DENIED.

3. Defendants Shelly Fox, Edie Ferrill, Jayme Foley, and St. Croix County's motion for summary judgment, Dkt. 126 in case number 16-cv-718-jdp; Dkt. 110 in 18-cv-576-jdp, is GRANTED.

4. Defendants Rick Huneke, Nancy Hove, and Pierce County's motion for summary judgment, Dkt. 134 in case number 16-cv-718-jdp, Dkt. 118 in case number 18-cv-576-jdp, is GRANTED.

5.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered November 15, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge